**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

PATRICIA DILLON,

                              Plaintiff,                    21-cv-07398 (VF)

            -against-                                       <u>**OPINION & ORDER**</u>

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security,

                              Defendant.

----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

        Plaintiff Patricia Dillon[1] seeks judicial review of a final determination by Defendant, the

Commissioner ("Commissioner") of the Social Security Administration ("SSA"), denying

Dillon's application for disability insurance benefits ("DIB") and supplemental security income

("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act ("the Act").

Before the Court is Dillon's motion for summary judgment and the Commissioner's cross-

motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure. For the reasons set forth below, Dillon's motion is **DENIED**, and the

Commissioner's cross-motion is **GRANTED.**

---

[1] The complaint has Plaintiff's name misspelled as "Dillion." The correct spelling of
Plaintiff's last name is "Dillon." <u>See</u> R. at 264, 331; Def.'s Br. at 1.

## BACKGROUND[2]

### A. Procedural History

On May 19, 2019, Dillon filed her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"), alleging May 31, 2019, as the onset date of her disability. See ECF No. 14, SSA Administrative Record ("R.") at 259-74, 275-81, 323. When Dillon applied for DIB and SSI, she alleged disability due to her "right ankle," "back impairment," and Chronic Obstructive Pulmonary Disease ("COPD"). Id. at 323, 833. Dillon's claims for DIB and SSI were initially denied on November 25, 2019. Id. at 149. Dillon filed a request for reconsideration for social security benefits on December 17, 2019, id. at 157, and on July 8, 2020, the Social Security Administration found the previous determination proper under the law, id. at 165. On August 6, 2020, Dillon filed a written request for a hearing before an administrative law judge. Id. at 183.

On December 10, 2020, Dillon and her counsel, Yocasta Duran, appeared before Administrative Law Judge Patrick Kilgannon (hereinafter, the "ALJ"). Id. at 51. On February 24, 2021, the ALJ issued his written decision, finding that Dillon had not been under a disability within the meaning of the Act from June 22, 2018, through the date of his decision. Id. at 12-32. Dillon requested that the SSA Appeals Council review the ALJ's decision. Id. at 1-6, 251-52. Her request was denied on August 10, 2021. Id. at 1-6. That denial made the February 24, 2021 decision of the ALJ the final action of the Commissioner. See Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) ("If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision.") (citation omitted).

---

[2] Page citations herein to documents filed on ECF are to the original pagination in those documents.

On September 2, 2021, after exhausting her administrative remedies, Dillon commenced the instant action seeking judicial review of the ALJ's decision and requesting that this Court either set aside the decision and allow her claims for SSI and DIB or, alternatively, remand for a hearing. See Complaint, ECF No. 1. On September 19, 2022, the Commissioner filed the Administrative Record, which constituted his answer. ECF No. 14.

Thereafter, on November 17, 2022, Dillon moved for summary judgment and submitted a memorandum of law in support of her motion, requesting that the Court reverse the ALJ's decision or remand for further proceedings. See ECF Nos. 18-19. On January 13, 2023, the Commissioner submitted his opposition and a cross-motion for judgment on the pleadings. See ECF Nos. 20-21. Dillon filed a response to the Commissioner's opposition on February 2, 2023. See ECF No. 22.

**B.  Medical Evidence**

The parties' memoranda in support of their motions provide summaries of the medical evidence contained in the administrative record. See Pl.'s Br. at 4-12, ECF No. 19; Def.'s Br. at 2-7, EFC No. 21. Having examined the record, the Court concludes that the parties have accurately stated its contents. Although the parties focus on different aspects of the record at times, there are no inconsistencies in the parties' recounting of the medical evidence, except in one circumstance. In Dr. Feder's medical reports from April 17, 2018, and February 27, 2018, Dr. Feder stated that Dillon "can return to work with limitations on working 4 days per week, 1 day remotely from home." E.g., R. at 519, 597. Relying on Dr. Feder's statement, Dillon's counsel states that Dillon "was found to only be able to work four days a week." Pl.'s Br. at 16. Defendant's counsel, conversely, states that Dr. Feder opined that Dillon can work four days a week in person and one day a week remotely.

Def.'s Br. at 5. Because Dr. Feder's medical reports do not support Plaintiff counsel's characterization, the Court adopts Defense counsel's interpretation that Dillon was found able to work four days a week in person and one day a week remotely. The Court otherwise adopts the parties' summaries as complete for the purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical evidence in the record is discussed below to the extent necessary to address the issues raised in the pending cross-motions.

## **DISCUSSION**

### A. **Legal Standards**

#### 1.   Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted).[3]

---

[3] Plaintiff refers to her motion as one seeking summary judgment pursuant to Fed. R. Civ. P. 56(a). Pl.'s Br. at 1. "[G]iven the nature of the proceedings—an action to review a final decision of the Commissioner—it makes no difference" whether Plaintiff's motion is considered "to be a motion for judgment on the pleadings or a motion for summary judgment." Williams v. Kijakazi, 21-CV-5252 (CS)(JCM), 2022 WL 18587778, at *1 n. 2 (S.D.N.Y. Dec. 21, 2022) (quoting Monroe v. Berryhill, 17-CV-3373 (ER) (HBP), 2018 WL 3912255, at *1 n.2 (S.D.N.Y. July 24, 2018)).

2.  <u>Judicial Review of the Commissioner's Decision</u>

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); <u>accord</u> <u>Greek v. Colvin</u>, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); <u>see generally</u> 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

Substantial evidence is "more than a mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>accord</u> <u>Greek</u>, 802 F.3d at 374-75; <u>Burgess v. Astrue</u>, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." <u>Id.</u> (citation omitted). In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." <u>Selian</u>, 708 F.3d at 417 (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." DeJesus v. Astrue, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see also Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

3.   Commissioner's Determination of Disability

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see id. § 1382c(a)(3)(B). In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the

Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful

that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'"

Mongeur, 722 F.2d at 1037 (quoting Gold v. Sec'y of H.E.W., 463 F.2d 38, 41 (2d Cir. 1972)).

The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or

medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by

the claimant or others; and (4) the claimant's educational background, age, and work

experience." Id. (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per

curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation

process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d

Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity." 20

C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide

if the claimant has a "severe medically determinable physical or mental impairment," id. §

416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly

limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c).

Third, if the claimant has such an impairment, the Commissioner considers whether the medical

severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P,

Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled.

Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special

technique" to determine the severity of the claimant's impairment at step two, and to determine

7

whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R §

416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found

to have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the

symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),'

then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with

paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities

of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of

decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18

(S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations

for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or

extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-

point scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and

citations omitted).

 Fourth, if the claimant's impairment does not meet or equal a listed impairment, the

Commissioner continues to the fourth step and determines whether the claimant has the residual

functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §

416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §

416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the

Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and

work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant

cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

 The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the

claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the

Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. § 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, the SSA's regulations required application of the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant. See 20 C.F.R. § 416.927(d)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004). Under the treating physician rule, an ALJ was required to provide her reasoning if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588-89 (S.D.N.Y. 2000). In addition, under the treating physician rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017 (such as Dillon's application in this case). See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869-70, 2017 WL 168819 (Jan. 18, 2017). "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." Velasquez, 2021 WL 4392986, at *19 (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from [a claimant's] medical sources."[4] 20 C.F.R. §416.920c(a); <u>see</u>

<u>also</u> <u>Young v. Kijakazi</u>, No. 20-CV-03606 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13,

2021). Instead, an ALJ must consider all medical opinions in the record and "evaluate the

persuasiveness" based on five "factors": (1) supportability; (2) consistency; (3) relationship with

the claimant; (4) specialization; and (5) any "other" factor that "tend[s] to support or contradict a

medical opinion." 20 C.F.R. § 416.920c(a)-(c).

 Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to

articulate a rationale for each factor varies. 20 C.F.R. § 416.1520c(a)-(b). Under the new

regulations, the ALJ must "explain," in all cases, "how [she] considered" both the supportability

and consistency factors, as they are "the most important factors." <u>Id.</u> § 416.920c(b)(2); <u>see also</u>

<u>Young</u>, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most

important" of the five factors); <u>Amber H. v. Saul</u>, No. 3:20-CV-490 (ATB), 2021 WL 2076219,

at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the

persuasiveness of medical opinions are consistency and supportability," the "same factors" that

formed the foundation of the treating physician rule). With respect to the supportability factor,

"the strength of a medical opinion increases as the relevance of the objective medical evidence

and explanations presented by the medical source increase." <u>Vellone v. Saul</u>, No. 20-CV-261

---

[4] The new regulations define "prior administrative medical finding" as: a "finding, other
than the ultimate determination about whether you are disabled, about a medical issue made by
our Federal and State agency medical and psychological consultants at a prior level of review
(<u>see</u> § 416.1400) in your current claim based on their review of the evidence in your case record,
including but not limited to: (i) The existence and severity of your impairment(s); (ii) The
existence and severity of your symptoms; (iii) Statements about whether your impairment(s)
meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P,
Appendix 1; (iv) If you are an adult, your [RFC]; (v) Whether your impairment(s) meets the
duration requirement; and (vi) How failure to follow prescribed treatment (<u>see</u> § 416.930) and
drug addiction and alcoholism (<u>see</u> § 416.935) relate to your claim." 20 C.F.R. § 416.913(a)(5).

(RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §
416.920c(c)(1)); see Rivera, 2020 WL 8167136, at *16 (noting that supportability "has to do
with the fit between the medical opinion offered by the source and the underlying evidence and
explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. §
416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how
well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL
319354, at *6 (citing 20 C.F.R. § 416.920c(c)(2)).

     As to the three remaining factors—relationship with the claimant, specialization, and
"other"—the ALJ is required to consider, but need not explicitly discuss, them in determining the
persuasiveness of the opinion of a medical source. 20 C.F.R. § 416.920c(b)(2). If the ALJ finds
two or more medical opinions to be equally supported and consistent with the record, but not
identical, the ALJ must articulate how she considered the three remaining factors. See id. §
416.920c(b)(3); see also Velasquez, 2021 WL 4392986, at *20. Thus, "[a]lthough the new
regulations eliminate the perceived hierarchy of medical sources, deference to specific medical
opinions, and assigning 'weight' to a medication opinion, the ALJ must still 'articulate how [she]
considered the medical opinions' and 'how persuasive [she] find[s] all of the medical opinions.'"
Andrew G. v. Comm'r of Soc. Sec., No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y.
Oct. 1, 2020) (citations omitted). "If the ALJ fails adequately to 'explain the supportability or
consistency factors,' or bases [his] explanation upon a misreading of the record, remand is
required." Rivera, 2020 WL 8167136, at *14 (quoting Andrew G., 2020 WL 5848776, at *9).

     Courts considering the application of the new regulations have concluded that "the
factors are very similar to the analysis under the old [treating physician] rule." Velasquez, 2021
WL 4392986, at *20 (quoting Dany Z. v. Saul, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); see also

Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (collecting cases considering the new regulations and concluding that "the essence" of the treating physician rule "remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"), report and recommendation adopted by, 2022 WL 717612 (Mar. 10, 2022). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was supported by well-accepted medical evidence and not inconsistent with the rest of the record before controlling weight could be assigned." Acosta Cuevas, 2021 WL 363682, at *9; see also e.g., Andrew G., 2020 WL 5848776, at *5 (noting that "consistency and supportability" were the foundation of the treating physician rule).

Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. Osorio v. Barnhart, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" Id. (quoting Aponte v. Sec'y of Health and Hum. Servs., 728 F.2d 588, 591 (2d Cir. 1984)) (first alteration in original). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" Id. (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)).

12

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. Genier, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. Id. First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. Id.; see also 20 C.F.R. § 416.929(b). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quotation omitted); see also 20 C.F.R. § 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (SSA July 2, 1996)).

**B.  The ALJ's Decision**

On February 24, 2021, the ALJ issued his decision, R. at 12-26, finding that Dillon was not disabled under the Act, id. at 26. The ALJ began by explaining the five-step process for determining whether an individual is disabled. Id. at 16-17.

As a threshold matter, the ALJ found that Dillon met the insured status requirements of the Act through December 31, 2023. Id. at 17. At step one, the ALJ found that Dillon had not

engaged in substantial gainful activity since June 22, 2018. Id. At step two, the ALJ found that

Dillon had six severe impairments: (1) obesity; (2) COPD; (3) diabetes mellitus; (4) right ankle

posttraumatic osteoarthritis status post arthroscopy; (5) lumbar spine degenerative disc disease;

and (6) cervical radiculopathy. Id. at 18.

At step three, the ALJ found that Dillon "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d),

416.925 and 416.926)." Id. The ALJ discussed Dillon's musculoskeletal impairments and COPD

and explained why he concluded that the severity of each impairment did not meet the

corresponding listing. Id. at 18-19. The ALJ also discussed Dillon's diabetes mellitus and obesity

which did not have listings and found that the residual functional capacity "sufficiently

accommodates [the impairments]." Id.

Before proceeding to step four, the ALJ found that Dillon maintained the RFC "to

perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except [Dillon] is

able to lift and/or carry 20 pounds occasionally and 10 pounds frequently." Id. at 19.

Specifically, the ALJ found that Dillon "is able to sit for 6 to 7 hours and stand and/or walk 4

hours in an 8-hour workday, with normal breaks"; Dillon can also "occasionally push and pull

bilaterally, and can occasionally climb ramps and stairs and can occasionally balance, stoop,

kneel, crouch and crawl, but should avoid ladders, ropes and scaffolds"; Dillon "should avoid

unprotected heights, gross vibration with the right lower extremity and extreme cold and

pulmonary irritants"; and Dillon "would be restricted to occupations that could be done with the

use of a hand held assistive device for ambulation." Id.

In considering Dillon's symptoms, the ALJ followed the established two-step process: (1) determining whether there was an underlying medically determinable physical or mental impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." Id. at 19-20. The ALJ analyzed Dillon's impairments, and after considering the evidence, found that Dillon's activities of daily living "[indicated] that [Dillon] is not more limited than doing light exertional work with the above limitations to accommodate any exacerbations" and Dillon "retains the residual functional capacity to perform work activities consistent with the residual functional capacity assessment above." Id. at 25. The ALJ also independently evaluated each of the medical opinions and prior administrative medical findings, and determined whether each opinion was "persuasive," "somewhat persuasive," "less persuasive," or not persuasive. Id. at 23-25.

At step four, the ALJ found that Dillon was able to perform the work of an administrative assistant and manager/personnel of human resources, as well as her past relevant work as a secretary. Id. at 25. The ALJ compared Dillon's residual functional capacity with the physical and mental demands of her past work and found that Dillon was "able to perform it as actually and generally performed." Id. The ALJ cited to the Vocational Expert's finding that Dillon was "able to perform her past relevant work within the above residual functional capacity," as well as the Vocational Expert's testimony that his opinion is consistent with the Dictionary of Occupational Titles and his 40 years of experience. Id. at 25-26. Accordingly, the ALJ concluded that Dillon "has not been under a disability" within the meaning of the Act "from June 22, 2018, through the date of this decision." Id. at 26 (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f)).

C.  **Analysis**

The medical evidence in the record demonstrates that the ALJ properly incorporated Dillon's impairments and their effects into determining Dillon's RFC—a determination which is supported by substantial evidence. First, in assessing Dillon's RFC, the ALJ explicitly noted the testimony of medical expert Dr. Steven Golub. R. at 23. After reviewing the record, Dr. Golub opined that Dillon "is able to lift and/or carry up to 10 pounds frequently and 20 pounds occasionally" with no "significant limitations in use of the upper extremities" except "[p]ushing and pulling would have to be occasional." Id. at 23, 57. The ALJ also considered Dr. Golub's conclusion that Dillon could sit for six to seven hours and stand/walk for four hours in an eight-hour workday. Id. The ALJ found Dr. Golub's opinion persuasive because it was consistent with the evidence in the record. Id. at 23. That finding is supported by the record.

For instance, Dr. Golub's opinion that Dillon could lift and/or carry up to ten pounds frequently and twenty pounds occasionally is consistent with the Disability Determination Explanation from July 7, 2020, that found Dillon could lift and/or carry up to ten pounds. Id. at 127. Dr. Golub's opinion is also consistent with the opinions of consultative examiners Dr. Syeda Asad and Dr. Evelyn Wolf, both of whom opined that Dillon had moderate limitations for lifting, id. at 568, 833, which is consistent with Dr. Golub's finding that Dillon could occasionally carry and/or lift up to twenty pounds, see Burpoe v. Berryhill, 18-CV-3168 (HBP), 2019 WL 3329818, at *15 (S.D.N.Y July 24, 2019) (finding that a doctor's opinion that a plaintiff could not lift objects over twenty-five pounds constituted a moderate restriction). And both Dr. Asad and Dr. Wolf reached their respective opinions after separately examining Dillon. Id. at 566, 830.

Additionally, Dr. Golub's opinion that Dillon had no "significant limitations in use of the upper extremities", id. at 57, is consistent with treatment notes from various medical providers. For instance, treatment notes from November 2019 to March 2020, from pain management specialist Dr. Robert Iadevaio, internist Dr. Vincent Stracuzzi, and orthopedist Dr. Tiffany Wu all indicated that Dillon had full muscle strength throughout her upper extremities. Id. at 23, 411, 631, 656, 723.

Similarly, Dr. Golub's opinion that Dillon could "sit [] for six to seven hours and stand and walk for four," id. at 57, despite her right ankle injury, is consistent with treatment notes from Dillon's orthopedic surgeon, Dr. John Feder. Dr. Feder conducted a physical examination of Dillon on March 13, 2017, and noted that Dillon had near-to-full strength in her right ankle with minimal diffuse swelling. Id. at 23, 477. Dr. Golub's opinion is also consistent with x-rays taken of Dillon's right foot and ankle from January 30, 2018, which Dr. Feder indicated showed "no fractures, subluxations, or dislocations" and "no significant abnormalities." Id. at 467. What's more, Dr. Golub's opinion concerning Dillon's ability to stand and walk for four hours during an eight-hour workday is also consistent with Dillon's own statements concerning her daily activities. For example, Dillon reported that she walks one mile every day. Id. at 22, 419. Dillon also reported that she shops in stores approximately once or twice a week for approximately an hour. Id. at 22, 343. Additionally, Dillon cooks, cleans, showers, dresses herself, and goes to her community pool three to four times a week. Id. at 22, 567, 343-44.

Next, the ALJ found Dr. Feder's opinion generally persuasive but found some aspects of the opinion less persuasive. Id. at 24. Dr. Feder's medical source statement concluded that Dillon could occasionally perform postural maneuvers, but never climb ladders or scaffolds. Id. at 852. Dr. Feder also opined that Dillon could occasionally operate foot controls with her right foot and

continuously reach bilaterally and lift up to fifty pounds. Id. at 849, 851. Dr. Feder also noted

Dillon could sit for six hours and stand and walk for one hour each in an eight-hour workday and

walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a

few steps at a reasonable pace, prepare meals, sort, handle and use paper files." Id. at 850, 854.

The ALJ found the opinion to be generally persuasive because Dr. Feder was Dillon's orthopedic

surgeon and had treated Dillon for pain in her right foot from January 2018, through March

2020. Id. at 20, 419-533, 590-629, 634-47, 688-708, 725, 749, 752-829.

A review of the record demonstrates that Dr. Feder's opinion concerning Dillon's ability

to perform postural maneuvers and reach bilaterally is consistent with other medical evidence in

the record. On November 21, 2019, state agency medical consultant Dr. M. Vasquez-Gonzalez

opined, like Dr. Feder, that Dillon could occasionally to frequently perform postural maneuvers,

but could never climb ladders, ropes, or scaffolds. Id. at 83. Dr. Vasquez-Gonzalez also stated

that Dillon had no limitations pushing or pulling which included the operation of foot controls.

Id. at 82. Additionally, on March 17, 2020, consultative examiner Dr. Evelyn Wolf found that

Dillon was markedly limited in climbing and moderately limited in lifting. Id. at 833.

Furthermore, on December 10, 2020, Dr. Golub opined that Dillon could occasionally perform

postural activities and pushing/pulling, and although Dillon could climb stairs occasionally, she

should not be exposed to ladders, scaffolds, or ropes. Id. at 57.

The ALJ, however, found less persuasive Dr. Feder's opinion concerning Dillon's ability

to stand and walk for only an hour in an eight-hour workday. Id. at 24. That determination, too,

is supported by the record which shows that Dillon's own statements contradicted Dr. Feder's

opinion in that regard. In treatment notes from March 2019, Dillon reported to Dr. Feder that she

walked one mile every day. Id. at 419. Dillon also reported in her Function Report that she can

shop in stores approximately once or twice a week for approximately an hour. Id. at 343. In the same report, Dillon also stated that she goes to her community pool approximately three to four times a week. Id. at 343-44. Dillon's statements concerning her daily activity lend support to the ALJ's determination that Dr. Feder's opinion as to Dillon's ability to stand and walk was less persuasive. Miller v. Comm'r of Soc. Sec., 22-CV-02527 (SDA), 2023 WL 4363004 at *12 (S.D.N.Y. July 6, 2023) (finding that the ALJ reasonably concluded that portions of an opinion were less persuasive partly because they were inconsistent with the claimant's daily activities). Further support for the ALJ's finding is the November 2018 examination by Dr. Neil Kirschen, which revealed that Dillon had full motor strength, normal sensation, and no weakness. R. at 20, 411. The ALJ also noted that examinations conducted by Dr. Feder showed that while Dillon had decreased sensation in her right ankle, foot, and lower leg, she had full motor strength. Id. at 20, 411, 420-21. Additionally, Dillon's workers' compensation examination with Dr. Paul Kleinman showed good strength in Dillon's right ankle with decreased sensation and range of motion. Id. at 20, 649.

The ALJ also considered the opinions of Dr. Syeda Asad and Dr. Evelyn Wolf, finding those opinions to be somewhat persuasive. Id. at 24. That determination is also supported by the record. Dr. Asad conducted an evaluation of Dillon on August 6, 2019, and found that Dillon had marked limitations for squatting, kneeling, bending, walking, and standing for a long period of time and moderate limitations for lifting, carrying, or pushing heavy objects. Id. at 568. Dr. Wolf conducted an evaluation of Dillon on March 17, 2020, and concluded that Dillon was moderately to markedly limited in walking and standing, markedly limited for climbing, moderately limited in lifting, and had no limitation in sitting "if she could stretch from time to time." Id. at 833.

The ALJ reasonably found Dr. Asad's and Dr. Wolf's opinions only somewhat persuasive, because although both opinions were based on an in-person evaluation of Dillon, neither physician quantified specific functional limitations in their respective opinions. In any case, the limitations indicated by Dr. Asad and Dr. Wolf do not necessarily contradict the ALJ's determination that Dillon can perform light work. Dr. Asad opined that Dillon was moderately limited in her ability to stand and walk, id. at 568, and Dr. Wolf opined that Dillon was moderately to markedly limited in walking and standing, id. at 833. But moderate to marked limitations in walking and standing are consistent with the ALJ's RFC determination that Dillon could perform light work. Indeed, "[c]ourts in this circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work." Ruiz v. Comm'r of Soc. Sec., 625 F. Supp. 3d 258, 268 (S.D.N.Y. 2022) (quoting Renee L. v. Comm'r of Soc. Sec., 2022 WL 685285, at *9 (N.D.N.Y. Mar. 8, 2022) (collecting cases); see also White v. Berryhill, 753 F. App'x 80, 82 (2d Cir. 2019) (consultative physician's opinion that plaintiff had moderate limitations in standing, sitting, and performing "other activities" supported RFC for light work).

The ALJ found that Dillon's statements concerning the intensity, persistence, and limiting effects of her shoulder and back pain were not entirely consistent with the record. R. at 20. That finding is also supported by the evidence in the record. For example, Dillon was diagnosed with cervical radiculopathy in January 2020 and was prescribed physical therapy. Id. at 21, 687. Then, in March 2020, Dillon reported suffering from persistent shoulder pain, but indicated that physical therapy would make her "feel better temporarily." Id. at 21, 822. Dr. Wu recommended that Dillon receive an MRI. Id. at 21, 824. However, the ALJ noted that there were no additional treatment notes from Dr. Wu and no evidence in the record that Dillon ever

obtained an MRI of her cervical spine. Id. at 21. The ALJ also noted that Dillon had not received any injections to her neck or back or undergone a cervical or lumbar MRI, which led the ALJ to conclude that these impairments were not as severe as Dillon alleged. Id. at 22. In other words, the record indicates that Dillon's treatment for her postoperative right ankle pain, neck pain, and back pain were largely maintained by physical therapy and medication. See id. at 406-08, 677-81, 838-47. Given the treatment Dillon received, the ALJ reasonably concluded that her symptoms did not limit her activities to the extent she alleged. Id. at 20; see also Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2013) (evidence of a conservative treatment regimen supported the ALJ's finding that the plaintiff's symptoms were not as severe as alleged); Dolan, 2018 WL 4658804, at *17 ("A claimant's conservative treatment regimen is a relevant factor that an ALJ may consider in making his RFC determination.").

Dillon's activities of daily living also support the ALJ's RFC determination, contrary to Dillon's claim that she "is not even capable of performing sedentary work." Pl.'s Br. at 15. For example, the ALJ noted that during Dillon's Function Report from June 27, 2019, she stated that she has no problems performing personal care such as dressing and bathing, although she does need a shower chair and must sit to put on her pants. Id. at 22, 59, 341-42. The ALJ further noted that Dillon reported shopping in stores once or twice a week for approximately an hour each time. Id. at 22, 343. The ALJ also noted that Dillon had reported to Dr. Asad on August 6, 2019, that she cooks, cleans, does laundry, shops, and independently showers and dresses. Id. at 22, 567. Additionally, Dillon stated in her Function Report that her hobbies included walking and she goes "out to dinner or the movies on occasion." Id. at 344. What's more, in treatment notes from March 2019, Dillon reported to Dr. Feder that she walks one mile every day. Id. at 22, 419. Dillon also goes to her community pool approximately three or four times a week. Id. at 343-44.

Lastly, the ALJ noted Dillon's testimony that her pain medications relieve her pain and allow her to handle her daily activities. Id. at 22, 62.

Dillon's activities of daily living, as evident from the record, support the ALJ's finding that Dillon could perform light work. See Browne v. Comm'r of Soc. Sec., 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015) (finding that activities such as preparing meals, ironing, laundry, going out alone, shopping, and walking five blocks before stopping to rest, supported RFC that plaintiff could perform light work); Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980) (finding that activities such as cooking, sewing, shopping, and washing, even though performed "slowly" and with "an afternoon rest," in conjunction with other evidence, supported RFC that plaintiff could perform light or sedentary activity); Acevedo v. Saul, 577 F. Supp. 3d 237, 250 (S.D.N.Y. 2021) (reasoning that a plaintiff's activities, such as going out alone and shopping in stores supported a finding that a plaintiff could perform light work); Simmons v. Colvin, No. 13-CV-1724 (KBF), 2014 WL 104811, at *5-6 (S.D.N.Y. Jan. 8, 2014) (concluding that the plaintiff's testimony that she could walk several blocks and did her own cooking, cleaning, and laundry provided substantial evidence for an RFC finding limiting the plaintiff to light work).

An analysis of the medical opinions and treatment records show that the ALJ's RFC determination is supported by substantial evidence. Dillon's arguments to the contrary are meritless. First, Dillon argues that the ALJ failed to incorporate the limitations, concerning Dillon's ability to walk and stand, stated in reports from Dr. Wu, Dr. Wolf, Dr. Feder, and the Disability Determination Explanation. Pl.'s Br. at 15-17. But as already discussed, the ALJ's determination that Dillon could walk and/or stand for four hours and could perform light work was supported by the opinions of Dr. Golub, Dr. Wolf, and Dr. Asad, as well as by Dillon's own activities of daily living.

Second, Dillon contends that the ALJ erred in failing to consider the possible side effects of Dillon's medication on her functional limitations. Pl.'s Br. at 19. However, the ALJ did consider the opinion of Dr. Feder from May 7, 2019, which stated that "[prescription] may affect patient's ability to work, make patient drowsy, or other issue[s]." R. at 24, 643. The ALJ found this aspect of Dr. Feder's opinion to be less persuasive, because it "lacked functional limitations" and was "inconsistent with [Dr. Feder's] opinion dated June 9, 2020." Id. at 24. On June 9, 2020, Dr. Feder found that Dillon would be able to walk, stand, and sit during an eight-hour workday for limited periods of time. Id. at 850. In that opinion, Dr. Feder did not indicate that Dillon would have any side effects from her medication that would prevent her from performing even light work. Id. at 849-854. Furthermore, on November 9, 2018, Dillon saw pain management specialist Dr. Robert Iadevaio for chronic back pain. Id. at 410. Dillon reported that her prescription for Oxycodone helped her pain, and she denied suffering any side effects from taking that medication. Id. Also, the record indicates that other medical providers who had examined Dillon while she was taking Oxycodone reported that she was "alert" and "oriented"; they did not indicate that Dillon appeared drowsy. See id. at 407, 411, 560.

Lastly, Dillon appears to contend that a remand is necessary because "the Disability Determination *inaccurately* found that the claimant would once again need a medical[ly] necessary cane for ambulation." Pl.'s Br. at 18 (emphasis added). Dillon, however, claims that she *would* have to "hold a medically necessary cane [in] her dominant hand." Id. The Vocational Expert's recommendation and the ALJ's RFC are consistent with Dillon's need for a cane, as both noted that Dillon required the use of a cane. The ALJ's RFC determination expressly noted that Dillon "would be restricted to occupations that could be done with the use of a hand held assistive device for ambulation." R. at 19. Additionally, the Vocational Expert testified that

although the Dictionary of Occupational Titles ("DOT") does not specifically address the use of a cane, his testimony regarding the availability of certain jobs for someone who required a cane was based on his experience placing people with similar limitations. Id. at 71-72. The Vocational Expert testified that, given the ALJ's RFC, Dillon could perform her past work as is customarily performed. Id. at 70.

## **CONCLUSION**

For the foregoing reasons, Dillon's motion for summary judgment is **DENIED**, and the Commissioner's cross-motion for judgment on the pleadings is **GRANTED**. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 18 and 20. The Clerk of Court is also respectfully directed to close this action.

DATED:     September 28, 2023
             New York, New York

Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge